*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* W TERRY, Minor.

UNPUBLISHED
December 22, 2022

No. 361916
Muskegon Circuit Court
Juvenile Division
LC No. 19-001876-NA

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor child, WLT, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

## I. BACKGROUND

This case arises out of a Children's Protective Services (CPS) complaint filed after WLT's meconium tested positive for THC at birth. CPS substantiated the case for physical abuse and physical neglect because of homelessness. No petition was filed at the time, and CPS attempted to provide services to respondent before doing so. However, after respondent reported leaving WLT and his older siblings[1] in the care of respondent's roommate, who used cocaine and methamphetamines and on one occasion left the children without adult supervision, petitioner sought to remove the children from respondent's care and custody. The trial court took jurisdiction over the children, identifying the barriers to reunification as substance abuse, mental health, parenting skills, housing, and employment.

After the children were removed, respondent was offered numerous services, but failed to engage in the majority of them. During the three years this case was open, respondent tested positive for cocaine, methamphetamines, and a prescription drug for which she did not have a prescription. Respondent continuously tested positive for THC, but eventually obtained a medical

---

[1] The proceedings involved respondent's two other children, but the request for termination as to those two children was withdrawn after they were returned to their father. The father, who was WLT's legal father, voluntarily released his parental rights to WLT.

-1-

marijuana card. She was unable to maintain a job for more than five months and frequently moved homes, sometimes after being evicted. Respondent often lived with her short-term romantic partners, and, when those relationships soured, respondent would find herself without housing again. Respondent sometimes reported she was homeless, sleeping on her friends' couches. Respondent also showed concerning behavior during her visits with the children. She would bring third parties to visits with the children despite being told multiple times not to. She would introduce her romantic partners to the children, but these partners frequently changed. Respondent would make promises to the children she would not keep and on multiple occasions told the children when the next parenting-time visit was and then failed to show.

When respondent failed to successfully address the majority of her barriers after two years, the trial court authorized the filing of a termination petition. At the termination hearing, respondent's caseworkers, Family Engagement Therapy (FET) therapist, Early On worker, and Court Appointed Special Advocate (CASA) testified regarding her progress. The caseworkers and CASA testified regarding respondent's lack of improvement and believed termination was in WLT's best interests. The Early On worker testified she saw some improvement in respondent's parenting skills while working with her, but noted this improvement was observed in a very controlled environment. Respondent's therapist testified that respondent addressed her substance-abuse barrier, but her mental health remained a barrier.

After a prolonged, three-part termination hearing, the trial court found petitioner satisfied its burden by clear and convincing evidence that termination was proper under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (additional conditions exist); MCL 712A.19b(3)(g) (failure to provide proper care and custody); and MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to the parent). The trial court also found by a preponderance of the evidence that termination was in WLT's best interests. The court entered an order terminating respondent's parental rights on June 2, 2022.

## II. ANALYSIS

## A. STATUTORY GROUNDS

Respondent first argues that the trial court erred by determining that statutory grounds for termination were satisfied. We disagree.[2]

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and

---

[2] "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

In this case, the trial court did not clearly err by determining that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*). More than 182 days had elapse since the initial depositional order in May 2019. Respondent's barriers at adjudication were identified as (1) substance abuse, (2) mental health, (3) parenting skills, (4) housing, and (5) employment. As of the termination hearing, while respondent's substance-abuse barrier had been somewhat addressed, none of the other barriers had been resolved. Respondent continued to display emotional dysregulation through her interactions with her caseworkers and the trial court. Respondent had her parenting time suspended twice over the duration of the case because of her failure to properly engage with children, and she regularly changed both jobs and housing throughout the pendency of the case. Further, respondent failed to rectify the conditions that brought the child into care despite being given more than three years to do so and countless opportunities to participate in services. Respondent failed to meaningfully engage in services until late in the case, and, even at that point, did not show any initiative to seek help outside FET. Accordingly, there was sufficient evidence presented that the conditions that led to adjudication would not be rectified in a reasonable amount of time given the child's age.

We agree with respondent that the trial court erred by determining that MCL 712A.19b(3)(g) was satisfied in this case. Given that the court continuously noted throughout the proceedings that respondent was not financially capable of supporting herself, let alone the children, there was not sufficient evidence presented that respondent was "financially able" to provide proper care for the children.[3] However, this error was harmless because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). And because termination of respondent's rights was appropriate under MCL 712A.19b(3)(c)(*i*), it is not necessary for us to address whether the court erred by also relying on MCL 712A.19b(3)(c)(*ii*) and (j) as additional grounds for termination.

Respondent argues that the trial court impermissibly focused on her marijuana use. *In re Richardson*, 329 Mich App 232, 252-257; 961 NW2d 499 (2019), we held that the trial court erred by terminating the respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (g) on the basis of marijuana use when there was no evidence "demonstrating that [the] mother's use of medical marijuana interfered with her parenting." In this case, we are not aware of any evidence directly tying respondent's use of marijuana to her parenting ability, which was itself a barrier to reunification. That said, WLT had a health condition that would flare up when he was exposed to smoke, and WLT's foster parents noted that the child sometimes had difficulty breathing after

---

[3] MCL 712A.19b(3)(g) allows for termination of parental rights when

> [t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

parenting-time visits because of the smoke from respondent's cigarettes and marijuana. The trial court also noted that some of respondent's residences smelled of smoke. In any event, the record is clear that respondent's marijuana use was only one of a litany of problems, which distinguishes this case from *Richardson*.

Respondent also argues that the CASA's and caseworkers' testimonies were overgeneralized and not as reliable as the firsthand testimonies of respondent's service providers. But the CASA and caseworkers had extensive experience with respondent from prolonged interactions with her and the child. Further, while the CASA was not as experienced as the service providers, she underwent and completed CASA training and provided carefully documented reports describing her firsthand experiences working with respondent and the children. Also, the service providers on whom respondent relies, i.e., her therapist and Early On worker, did not testify as favorably as respondent asserts. Respondent's therapist testified that although respondent had addressed her substance-abuse issues, mental health remained a barrier. Similarly, the Early On worker believed respondent's parenting skills were improving, but it was under the caveat that her observations were in a controlled environment. The CASA and caseworkers were able to observe respondent in less formal settings and were well-equipped to discuss respondent's progress. We defer to the trial court's abilities to weigh the evidence and determine the credibility of the witnesses. *Demski v Petlick*, 309 Mich App 404, 445; 873 NW2d 596 (2015).

## B. BEST INTERESTS

We also disagree with respondent that the trial court erred by finding that it was in WLT's best interests to terminate respondent's parental rights.[4]

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance Minors*, 306 Mich App 713, 733; 858 NW2d 143 (2014). Considerations of the child's best interests include:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks, footnotes, and citations omitted).]

"[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

---

[4] We review "for clear error . . . whether termination is contrary to the child's best interests." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008).

In determining that termination of respondent's parental rights was in the child's best interests, the trial court considered respondent's poor bond with WLT and her inability to understand WLT's special needs. The court also considered respondent's failure to improve her parenting skills and WLT's bond with his current placement providers, who were willing and able to adopt and care for him properly. While WLT's current caregivers were relatives, and "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012), this singular factor weighing against termination does not countermand the numerous factors weighing in favor of termination. The court recalled respondent's longstanding history of not engaging in services during the case, along with the incredibly long period WLT was in care, which constituted the majority of his life, and the large number of moves between caregivers during that time. Although respondent was generally consistent with attending parenting times, she was often inappropriate and did not appear to take them seriously, bringing boyfriends to visits, giving WLT inappropriate things to chew on, and leaving WLT unsupervised. Further, during virtual visits, respondent would often be busy doing other activities and would frequently bring up ending visits early when WLT was fussy. Based on the record before us, the trial court did not clearly err in its best-interest determination.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates